UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA

UNITED STATES OF AMERICA

VERSUS

MAURICE A. BROWN
MARIO D. BROWN

CRIMINAL ACTION

NO. 10-100-BAJ-DLD

# RULING ON MOTION TO QUASH

I. **BACKGROUND**

Before the Court is a Motion to Quash Subpoena in a Criminal Case (doc. 95) filed by Cynthia Bridges, in her official capacity as Secretary of the Louisiana Department of Revenue ("LDR"). LDR filed the instant motion to quash in response to a subpoena issued by the United States Attorney's Office in the above-captioned matter. The United States filed an opposition to LDR's motion to quash. (doc. 99) The Court heard oral arguments on the motion to quash on December 6, 2010, at which time the Court deferred ruling on the motion and ordered the parties to file supplemental memoranda. Both LDR (doc. 101) and the United States (doc. 102) have filed supplemental briefs.

II. **LAW AND ARGUMENT**

The subpoena issued by the United States directs LDR to produce "all records related to Maurice Brown and Mario Brown concerning the tax years of 2008 and

1

2009, including but not limited to the tax returns for those two years."[1] The substance of LDR's motion to quash is based primarily on a Louisiana state statute, La. R.S. La. R.S. 47:1508. Pursuant to the state law provision, LDR contends that the tax records sought are confidential and privileged, and that the statute expressly prohibits LDR from disclosing these records except as allowed by the statute. LDR argues that the United States' subpoena fails to conform to any of the exceptions for disclosure provided by La. R.S. 47:1508. Accordingly, LDR submits that it is prohibited from divulging its tax records in this matter.[2]

In opposition to the motion to quash, the United States maintains that the Supremacy Clause of the federal constitution is controlling in this matter and that it "gives federal subpoenas precedence over state non-disclosure statutes."[3] The United States also argues that pursuant to Federal Rule of Evidence 501, federal law does not recognize Louisiana tax records as privileged. The United States further submits that LDR's disclosure of the requested tax records would not violate La. R.S. 47:1508, because the statute provides for an exception to the confidentiality of tax records "where otherwise provided by law."[4]

---

[1] A copy of the subpoena is attached to LDR's Motion to Quash as Exhibit "A."

[2] La. R.S. 47:1508C provides: "Whoever violates any provision of this Section by divulging information unlawfully shall be punished by imprisonment for not more than two years or fined not more than ten thousand dollars, or both."

[3] Opposition of the United States to Louisiana Department of Revenue's Motion to Quash Trial Subpoena, p. 2. (doc. 99)

[4] La. R.S. 47:1508(A)(1) provides: "Except as otherwise provided by law, the records and files of the secretary of the Department of Revenue or the records and files maintained pursuant to a tax

2

In addition to the arguments based on state and federal law, both parties have argued the applicability of two federal appellate court cases, *ACLU v. Finch*, 638 F.2d 1336 (5th Cir. 1981) and *In re Hampers*, 651 F.2d 19 (1st Cir. 1981), to the facts of the instant matter. In *Finch*, the Fifth Circuit examined a Mississippi state statute which provided for the confidentiality of records of the Mississippi Sovereignty Commission. The issue presented was whether a federal court should recognize an evidentiary privilege created by a state statute.[5] In deciding this issue, the court employed a two-part analysis. First, the court considered whether the fact that a state court would recognize the records as privileged would justify a federal court applying the privilege. The court determined that except in particular circumstances, such as where issues of state law predominate over the federal issues involved in the case, or where "the litigants can obtain substantially the same evidence by an unprivileged route without undue hardship," a state's recognition of a privilege is not controlling in a federal context. *Finch*, at 1343. Second, the court examined whether a federal court should recognize a privilege in its independent judgment. In deciding this second factor, the court applied the Wigmore factors previously adopted by the

---

ordinance, excluding ad valorem property taxes and ad valorem property tax assessment rolls, of any political subdivision are confidential and privileged, and no person shall divulge or disclose any information obtained from such records and files except in the administration and enforcement of the tax laws of this state or of a political subdivision of this state.

[5] While the state statute involved in *Finch* classified the records of the Mississippi Sovereignty Commission as confidential, it did not explicitly create an evidentiary privilege. However, the Fifth Circuit construed the statute as providing for an evidentiary privilege for the sake of argument. See, *Finch* at 1342.

court, and held that where all of the of the Wigmore factors are applicable, a federal court should recognize the evidentiary privilege.[6] Applying the Wigmore factors, the court found that the Mississippi statute did not create an evidentiary privilege that would exempt the documents from production in a federal court.

In the case of *In re Hampers, supra*, the First Circuit Court of Appeals considered an evidentiary privilege regarding state tax records. The Massachusetts Commissioner of Revenue moved to quash a federal grand jury subpoena for the production of state tax records in a criminal investigation, citing state law prohibiting the disclosure of tax information except under specified circumstances. The First Circuit, expressly adopting the Fifth Circuit's analytical framework in *Finch*, held that the state tax records should be afforded qualified immunity. Applying the Wigmore factors, the court found that the state statute created a valid evidentiary privilege. The First Circuit also considered 26 U.S.C. § 6103(i), the federal statute regulating disclosure of federal tax records. Section 6103(i) requires the entity seeking disclosure of tax information in a criminal non-tax investigation to show proof of the following elements: (1) reasonable cause to believe a crime has been committed; (2) that the information sought will be probative of the matter at issue in the prosecution

---

[6] The factors listed in 8 J. Wigmore, Evidence § 2285 (McNaughton rev. 1961) were adopted by the Fifth Circuit for the determination of a testimonial privilege in the case of *Garner v. Wolfinbarger*, 430 F.2d 1093 (5th Cir. 1970). See, *Finch* at 1344. These factors are: (1) the communications must originate in a confidence that they will not be disclosed; (2) this element of confidentiality must be essential to the full and satisfactory maintenance of the relation between the parties; (3) the relation must be one which in the opinion of the community ought to be sedulously fostered; and (4) the injury that would inure to the relation by the disclosure of the communication must be greater than the benefit gained for the correct disposal of litigation.

4

of that crime; and (3) that the same information or equally probative information can not be obtained elsewhere through reasonable efforts. The First Circuit concluded that a federal grand jury seeking the production of state tax records in a non-tax criminal investigation should be required to make the same showing that would be required under federal law for the disclosure of federal tax records.

## III. ANALYSIS

The tax information which the United States seeks through its subpoena is inherently sensitive in nature and must be afforded the highest degree of protection. This Court recognizes the considerable expectation of privacy which attaches to tax records, and will not lightly circumvent the right of the taxpayer, whether state or federal, to maintain the confidentiality of the personal financial information contained therein. Both the federal and state governments have recognized taxpayers' right of privacy with respect to tax records through the enactment of laws restricting their disclosure, even to the extent of limiting the right of government agencies to access tax documents.

It is in this context that the Court examines whether the evidentiary privilege over state tax records created by Louisiana law should be recognized in a federal venue. Federal Rule of Evidence 501 curtails, but does not foreclose, the application of privileges not recognized at common law.[7] The Court recognizes the Fifth Circuit's

---

[7] Federal Rule of Evidence 501 provides, in pertinent part: "Except as otherwise required by the Constitution of the United States or provided by Act of Congress or in rules prescribed by the Supreme Court pursuant to statutory authority, the privilege of a witness, person, government, State, or political

5

*Finch* decision as precedent, but notes that there are substantial differences between the facts of that case and the present matter. The records subpoenaed in *Finch* were the internal records of an abolished state commission, not mandatory filings submitted by members of the public. Furthermore, at the time that the commission's records were created, they were not privileged under state law. It was not until the statute abolishing the commission was passed, subsequent to the filing of the underlying civil lawsuit in *Finch*, that these records were retroactively sealed until a set future date.

The Court finds that the facts of the present case are clearly more analogous to the facts of the *Hampers* decision. As in the present case, *Hampers* involved state tax records subpoenaed in a non-tax related criminal case. The state statute in *Hampers*, like La. R.S. 47:1508, prohibited disclosure of tax records except in the circumstances provided for within the statute. Using the same analysis as the Fifth Circuit in *Finch*, the First Circuit reached a different conclusion with respect to the privilege created by the state tax statute. This Court agrees with *Hampers*' findings concerning the application of the Wigmore factors. Based upon its findings, the *Hampers* court concluded that the state tax records were subject to a qualified privilege, and that the grand jury issuing the subpoena would be required to make the factual showing required by 26 U.S.C. § 6103(i). The Court is in accord with

---

subdivision thereof shall be governed by the principles of the common law as they may be interpreted by the courts of the United States in the light of reason and experience."

*Hampers* to the extent that it finds that the United States, in its attempt to subpoena personal tax records which are privileged and confidential under state law, must proffer at least some factual basis to justify its request.

Concerning *Hampers*, the United States argues that "[s]uch an activist approach is unlikely to be adopted in the Fifth Circuit."[8] The Court cannot regard *Hampers* as "activist," particularly when it specifically adopts the *Finch* analysis created by the Fifth Circuit itself. The Court finds that the difference in the conclusions reached by *Finch* and *Hampers* is, to a great extent, attributable to the particular statutes at issue and the importance of the material protected by each. When the matter involves records such as these, on which the law confers the utmost protection, the courts are wise to exercise careful discretion when ordering their production.

The Court also considers 26 U.S.C. § 6103(i), and its requirements with respect to the disclosure of federal tax information in a criminal investigation unrelated to tax administration. The United States concedes that if it were to subpoena the Internal Revenue Service to produce the identical information which it now seeks from LDR, it would be required to submit facts to prove, *inter alia*, that there is reasonable cause to believe that information in the tax records may be

---

[8] United States' Supplemental Opposition to the Louisiana Department of Revenue's Motion to Quash Trial Subpoena, p. 3 (doc. 102)

relevant to a matter related to a commission of a specific criminal act.[9] The Court finds no material distinction between the expectation of privacy with respect to federal and state tax records. While the Court does not hold that the United States is required to put forth the exact showing required by § 6103(i), the Court does hold that United States must produce some factual basis to warrant the disclosure of these documents.[10]

Regarding the United States' argument that the Supremacy Clause of the federal constitution requires the state to produce its tax records in response to the trial subpoena, the United States Supreme Court has held that "[n]either the Supremacy Clause nor the Plenary Powers Clause bars all state regulation which may touch on the activities of the Federal Government." *Hancock v. Train*, 426 U.S. 167, 179, 96 S.Ct. 2006, 2013, 48 L.Ed.2d 555 (1976). Further, this Court is governed by the Fifth Circuit's "strong admonition" concerning a federal court's use of the Supremacy Clause. As the Fifth Circuit has explained:

> [A] federal court should jealously guard and sparingly use its awesome power to brush aside long-standing state constitutional provisions, statutes and practices. There can be no doubt that under the Supremacy Clause, federal courts do and indeed must have this authority in our unique form of government. It is the use of this power that must be maintained in the [proper] balance.

---

[9] The USAM provides a mandatory, detailed protocol for federal prosecutors to follow prior to applying for a court order for the production of federal tax records. Criminal Resource Manual 501.

[10] During its oral argument in opposition to LDR's Motion to Quash, the United States, while maintaining that it is not required to do so under the law, averred that a showing similar to what is required for the production of federal tax records can be made in this case.

*Chisom v. Roemer*, 853 F.2d 1186, 1189 (5th Cir. 1988).

The United States submits that if the Court requires the production of the tax records to be made in a sealed filing, and issues a protective order with respect to these documents, that the records will be afforded the same level of confidentiality as if they were produced to a grand jury. The Court will order the imposition of such protective measures should the United States demonstrate facts to justify the production of the tax records.

IV. ORDER

Accordingly, for the reasons stated herein, the Louisiana Department of Revenue's Motion to Quash Subpoena in a Criminal Case (doc. 95) is **GRANTED**, subject to the right of the United States Attorney's Office to offer an ex parte showing to the Court of factual grounds supporting the necessity of the subpoena. Should the United States elect to make such a showing, it is ordered to be submitted to the Court no later than January 28, 2011.

Baton Rouge, Louisiana, January 21, 2011.

BRIAN A. JACKSON
UNITED STATES DISTRICT JUDGE
MIDDLE DISTRICT OF LOUISIANA